**TOXCO, INC., Plaintiff–Appellant,**

v.

**TRANSCHEM, LLC, et al.
Defendants–Appellees.**

No. 00–6626.

United States Court of Appeals,
Sixth Circuit.

July 31, 2002.

Before KRUPANSKY and COLE, Circuit Judges; DUGGAN,* District Judge.

PER CURIAM.

Plaintiff–Appellant Toxco, Inc. has challenged the district court's award of summary judgment to the defendants-appellees TransChem, LLC ("TransChem"), FMC Corporation ("FMC") and Tierney & Black, Inc. ("Tierney & Black") The district court dismissed Toxco's breach of contract and fraudulent inducement of breach of contract claims because it could find no evidence that a contract actually existed between Toxco and TransChem.

In March, 1996, TransChem sought a buyer for five million pounds of lithium, for which it had been awarded a contract by the United States Department of Energy. On March 7, 1996, TransChem received from Toxco, a company with which it had previous contacts, the document at the center of this lawsuit. The document, a three page fax, was titled "Offer to Purchase Agreement." In this Offer, Toxco offered to purchase the lithium.

The Offer contained a deadline for TransChem to respond; TransChem sought a two-week extension of same and Toxco granted a one-week extension. TransChem then signed the Offer and returned it on March 21, 1996. In relevant part, the Offer stated

Agreement in Principle

This is an Offer -To—Purchase stockpiled LiOH–H₂O from TransChem. Agreement in principle to this Offer—To—Purchase by TransChem, *anticipates that a sales contract by and between Toxco and Transchem will be consummated.*

TransChem's fax cover sheet to Toxco contained the following message: "Attached is an executed copy of the Agreement in Principle. I assume that you will provide signed originals at some point.... We look forward to a review of the draft Sales Agreement at your earliest convenience." Toxco "[a]greed to forward Sales agreement to Recodyne [1] soon."

On March 29th, TransChem sent another fax to Toxco, indicating that it "look[ed] forward to receiving a draft of the sales agreement at your earliest convenience." About two weeks later, during the week of April 15, 1996, Mike Margolies of Toxco and Dan Black, one of TransChem's officers, had a telephone conversation. Margolies noted that he would need to "adjust the sales agreement." Margolies then asked George Adams, another of Toxco's directors "if he had a standardized sales agreement I could use."

After another two weeks had passed, during the week of April 29th, Margolies again promised TransChem's Dan Black that Margolies "would have [an] agreement to him right away." Toxco never sent a sales agreement to TransChem. Instead, TransChem contacted FMC in an effort to sell the lithium to it. In short order, an agreement was reached between TransChem and FMC and reduced to writing.

Toxco then filed the instant complaint, alleging breach of contract and fraudulent inducement of breach of contract against

---

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Recovery Dynamics or Recodyne is also known as Tierney & Black, Inc., an affiliated company of TransChem.

TransChem and FMC.[2] Defendants filed separate motions for summary judgment. In separate opinions, issued on March 24, 2000, July 31, 2000 and November 9, 2000, the district court awarded summary judgment to all three defendants, concluding that no contract had been reached between Toxco and TransChem because the agreement in principle by its own terms indicated that a contract had not yet been reached:

> [T]his "Offer To Purchase Agreement" indicates that the parties had not arrived upon any final contract on this subject matter. They expressly called this an "Agreement in Principle," fully recognizing that there must be further agreement upon details before there was a complete legal obligation because they acknowledged that the agreement "anticipates that a sales contract by and between Toxco and TransChem *will be* consummated." [emphasis added]
>
> In addition, both parties have prepared a time line and each time line reflects repeated contacts in regard to the preparation of a "sales agreement" or a "definitive agreement." Therefore, they both recognized that there must be a further agreement upon the details before there was a completed legal obligation. Clearly, neither party viewed the "sales agreement" or the "definitive agreement" as being the same as the "Offer to Purchase Agreement" that had already been executed, or there would have been no need for the subsequent interchange in regard to a sales agreement or the statement contained in the "Offer to Purchase Agreement" that stated that TransChem "anticipated that a sales contract by and between Toxco and TransChem will be consummated." (emphasis added).

[Moreover,] in this case the "conduct" of the parties did not recognize the existence of the contract because there was a repeated interchange about the preparation of such a sales contract or definitive agreement. The Court finds that what the parties did enter into was an agreement in principle, fully recognizing that there must be further agreement upon details before there was a complete legal obligation.

Because there was no antecedent contract between Toxco and TransChem, the district court further concluded that FMC could not have fraudulently induced the breach of a non-existent contract. On December 1, 2000, Toxco timely appealed.

This court has carefully reviewed the materials contained in the Joint Appendix and the arguments presented in the briefs of counsel submitted by the parties and concludes that the district court's awards of summary judgment to the various defendants were correct as a matter of law. This reviewing court therefore adopts the district court's well-reasoned opinions entered on March 24, 2000, July 31, 2000 and November 9, 2000.

Accordingly, the judgment of the district court is **AFFIRMED.**

---

**2.** Toxco also joined Tierney & Black as a defendant.